IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:19-CV-182 (WOB-CJS)

RUMPKE OF KENTUCKY, INC.,                                  PLAINTIFF,

VS.                    MEMORANDUM OPINION AND ORDER

TERRACON CONSULTANTS, INC.,                                DEFENDANT.

This is a lawsuit brought by Rumpke of Kentucky, Inc.
("Rumpke") against Terracon Consultants, Inc. ("Terracon") for
professional negligence, gross negligence, breach of express and
implied warranties, breach of contract, and unjust enrichment
stemming from geotechnical engineering services provided by
Terracon for Rumpke between 2008 and 2018. Currently before the
Court is Defendant's motion for summary judgment. (Doc. 59).

The Court has carefully reviewed this matter and, being
advised, now issues the following Memorandum Opinion and Order.

### *Factual and Procedural Background*

#### A. Rumpke's Initial Retainer of Terracon and 2011 Slope
#### Reconstruction Project

Plaintiff Rumpke owns and operates a landfill in Pendleton
County, Kentucky. (Doc. 59 at 5). The landfill is separated from
Grassy Creek by a perimeter berm, which prevents the steep slope
on the west side of the landfill from sliding into the creek. (Doc.

1

1 at ¶¶ 13–14). In August 2005, Rumpke observed cracks on the upper bench of the perimeter berm. (Doc. 59 at 6). In 2008, after monitoring the movement of the landfill's slope and attempting to address the issue in other ways, Rumpke engaged Defendant Terracon,[1] a geotechnical engineering company, for an analysis of the cracking issues at the perimeter berm and for recommendations about how to ensure the stability of the slope. (*Id.*). On August 7, 2008, Terracon sent Rumpke a letter summarizing its preliminary analyses and identifying three potential remedial measures: (1) rebuild the existing slope; (2) install drilled pier walls; or (3) build a soil buttress. (Doc. 1-2 at 2–3). Terracon stated that its assumptions and proposed remedial measures were "based on limited data and may not be representative of the actual conditions on the slope" and that "[t]o confirm these assumptions and the analysis supporting the remedial measures, a geotechnical exploration should be conducted."[2] (*Id.* at 3).

In May 2009, Terracon excavated three test pits at the perimeter berm and, in January 2010, Terracon sent Rumpke a second

---

[1] Although Rumpke initially reached out to a company called H.C. Nutting for geotechnical engineering consulting, H.C. Nutting was acquired by Terracon before its initial analysis of Rumpke's perimeter berm was completed in August 2008. (Doc. 1 at ¶¶ 18–19). The parties jointly refer to all relevant work as having been performed by Terracon. (Doc. 59 at 6 n.3; Doc. 62 at 2 n.1).

[2] The parties agree that no geotechnical exploration was ever conducted but dispute whether Rumpke declined to pay for such exploration. (Doc. 59 at 7; Doc. 62 at 6–7 n.5). However, this dispute is not relevant to Terracon's motion for summary judgment.

letter affirming its original opinion that reconstruction of the slope would "result in a more favorable stability condition." (Doc. 62 at 7; Doc. 1-3 at 3). Terracon also stated that its recommendations would "meet or exceed the minimum requirements of 401 KAR 48:080 Section 10 for structural integrity of the landfill components." (Doc. 1-3 at 3). Rumpke personnel rebuilt the existing slope between June 2, 2010, and January 7, 2011, while Terracon provided quality assurance and observation services. (Doc. 59 at 8). The parties did not execute a written contract at any point between Rumpke's initial engagement of Terracon in 2008 and the completion of the slope reconstruction project in 2011. (*Id.*).

**B. Rumpke's Reengagement of Terracon in 2014 and Buttress Fill Project**

Three years after completion of the slope reconstruction, in 2014, Rumpke again observed creep movement and small tension cracks on the perimeter berm. (Doc. 62 at 8). Rumpke reengaged Terracon and, in August 2014, Terracon provided Rumpke with a proposal for additional services regarding the perimeter berm. (Doc. 59 at 9). On September 22, 2014, the parties executed an Agreement for Services (the "2014 Agreement"). (*Id.*). The 2014 Agreement contained a provision limiting Terracon's potential liability arising out of its services or the agreement to the greater of

$50,000 or the amount of its fee.[3] (*Id.*). The 2014 Agreement also provided that "NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR . . . ANY SPECIAL, CONSEQUENTIAL, INDIRECT, PUNITIVE, OR EXEMPLARY DAMAGES." (*Id.* at 10; Doc. 1-5 at 7). Further, the 2014 Agreement stated that "[c]auses of action arising out of Consultant's services or this Agreement regardless of cause(s) or the theory of liability, including negligence, indemnity or other recovery shall be deemed to have accrued and **the applicable statute of limitations shall commence to run not later than the date of Consultant's substantial completion of services on the project.**" (Doc. 1-5 at 6) (emphasis added). Terracon also warranted in the 2014 Agreement that it would perform the relevant services "in a manner consistent with that level of care and skill ordinarily exercised by members of the profession currently practicing under similar conditions in the same locale." (*Id.*). Terracon charged Rumpke $44,919.22 in

---

[3] The provision states:
CLIENT AND CONSULTANT HAVE EVALUATED THE RISKS AND REWARDS ASSOCIATED WITH THIS PROJECT, INCLUDING CONSULTANT'S FEE RELATIVE TO THE RISKS ASSUMED, AND AGREE TO ALLOCATE CERTAIN OF THE ASSOCIATED RISKS. TO THE FULLEST EXTENT PERMITTED BY LAW, **THE TOTAL AGGREGATE LIABILITY OF CONSULTANT** (AND ITS RELATED CORPORATIONS AND EMPLOYEES) TO CLIENT AND THIRD PARTIES GRANTED RELIANCE **IS LIMITED TO THE GREATER OF $50,000 OR CONSULTANT'S FEE, FOR ANY AND ALL INJURIES, DAMAGES, CLAIMS, LOSSES, OR EXPENSES (INCLUDING ATTORNEY AND EXPERT FEES) ARISING OUT OF CONSULTANT'S SERVICES OR THIS AGREEMENT.** PRIOR TO ACCEPTANCE OF THIS AGREEMENT AND UPON WRITTEN REQUEST FROM CLIENT, CONSULTANT MAY NEGOTIATE A HIGHER LIMITATION FOR ADDITIONAL CONSIDERATION. THIS LIMITATION SHALL APPLY REGARDLESS OF AVAILABLE PROFESSIONAL LIABILITY INSURANCE COVERAGE, CAUSE(S) OR THE THEORY OF LIABILITY, INCLUDING NEGLIGENCE, INDEMNITY, OR OTHER RECOVERY. THIS LIMITATION SHALL NOT APPLY TO THE EXTENT THE DAMAGE IS PAID UNDER CONSULTANT'S COMMERCIAL GENERAL LIABILITY POLICY.
(Doc. 1-5 at 6) (emphasis added).

fees for services rendered pursuant to the 2014 Agreement. (Doc. 59 at 10).

In July 2015, Terracon provided Rumpke with an updated assessment of the perimeter berm, noting that it continued to experience minor tension cracks and creep movement. (Doc. 62 at 9). Terracon then proposed four remedial options: (1) build a soil buttress; (2) excavate/reconstruct the slope; (3) install stub piers; or (4) some combination of the first three options. (*Id.*; Doc. 1-6 at 5–6). Rumpke chose to proceed with a buttress fill and, on November 2, 2017, the parties executed a second Agreement for Services (the "2017 Agreement"), which contained the same limitation of liability and statute of limitations provisions, along with the same warranty as the 2014 Agreement. (Doc. 59 at 11; Doc. 1-7 at 7–8). Terracon charged Rumpke $9,985.00 in fees pursuant to the 2017 Agreement. (Doc. 59 at 11). In May 2018, Rumpke began soliciting bids from contractors for the construction of the buttress fill on the perimeter berm and ultimately chose Hinkle Construction Services, LLC ("Hinkle"). (Doc. 62 at 9).

On September 12, 2018, the parties executed another Agreement for Services (the "2018 Agreement"), which contained the same statute of limitations provision and warranty as the 2014 and 2017 Agreements, along with a limitation of liability provision which was substantially the same as the 2014 and 2017 Agreements, except

5

that it limited Terracon's potential liability to the greater of $10,000 or its fee, instead of the $50,000 limit imposed by the earlier Agreements. (Doc. 1-10 at 6-7). Terracon charged Rumpke $35,372.50 for services rendered under the 2018 Agreement. (Doc. 59 at 12). In late 2018, Hinkle began construction on the buttress fill. (*Id.*).

### C. Significant Lateral Movement and Formation of Toe Bulges Between December 17–19, 2018

Additional tension cracks began to appear on the perimeter berm as Hinkle began the buttress fill in November 2018. (Doc. 62 at 10). In a November 27, 2018, email, Ron Ebelhar of Terracon told Rumpke that "there ha[ve] been no apparent indications of toe bulges downslope – this would be an indication of more serious issues." (*Id.*; Doc. 57-1 at 662). Ebelhar later confirmed that the cracks found in November 2018 were the same type of tension cracks that had previously been found on the perimeter berm. (Doc. 62 at 10; Doc. 57-1, Ebelhar Dep. at 250:22-251:10).

On December 17, 2018, the perimeter berm experienced, for the first time, cracks that were more significant than the typical tension cracks. (Doc. 62 at 11; Doc. 57-1, Ebelhar Dep. at 277:15-22). Two days later, on December 19, 2018, Terracon confirmed that there was "significant lateral movement (over 2 feet at some survey points) toward the creek." (Doc. 62 at 11; Doc. 57-1 at 706). Terracon also alerted Rumpke to the occurrence of toe bulges at

the foot of the landfill for the first time on December 19, 2018. (Doc. 62 at 11; Doc. 57-1, Ebelhar Dep. at 286:5–25). Rumpke categorizes the significant lateral movement and toe bulge formation as a "catastrophic geological event" and, as a result, terminated Terracon on December 26, 2018. (Doc. 62 at 12).

In 2019, Rumpke hired Civil & Environmental Consultants, Inc. ("CEC") to evaluate the adequacy of the services and recommendations provided by Terracon. (*Id.*; Doc. 1 at ¶ 62). CEC concluded that, in 2008, Terracon should have performed a complete geotechnical exploration to confirm its initial assumptions. (Doc. 62 at 13; Doc. 52-1 at 17–18). According to CEC, Terracon should have realized that the only viable remedial measure in both 2008 and 2015 was drilled pier walls and the alternative remedial measures proposed by Terracon evidence a failure to exercise the degree of care and skill expected of a reasonably competent geotechnical engineer acting under similar circumstances. (Doc. 52-1 at 22). CEC opined that, if drilled pier walls had been originally installed in 2010 and 2011, instead of the slope reconstruction that was performed, the ongoing instability of the landfill's perimeter berm would have been prevented. (*Id.* at 19).

### D. This Court's Denial of Terracon's Motion to Dismiss

Rumpke filed this suit against Terracon on December 13, 2019, alleging: (1) professional negligence; (2) gross negligence; (3)

breach of express and implied warranties; (4) breach of contract; and (5) unjust enrichment. (*See* Doc. 1). On February 12, 2020, Terracon moved to dismiss Rumpke's complaint, arguing that Rumpke's claims were barred by the applicable statute of limitations. (*See* Doc. 20). On September 24, 2020, this Court heard oral argument on Terracon's motion to dismiss and denied the motion. (*See* Doc. 25).

### *Analysis*

Federal courts sitting in diversity apply federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Under federal law, summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "In determining whether there exists a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *See Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 (6th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is inappropriate if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id.*

In diversity cases, such as this one, when determining which state's substantive law to apply, federal courts sitting in diversity look to the conflict of laws rules in the forum state, which, here, is Kentucky. *See Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667 (E.D. Ky. 2010) (citing *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001)). "As [the Sixth Circuit has] noted on numerous occasions, Kentucky courts have an extremely strong and highly unusual preference for applying Kentucky law even in situations where most states would decline to apply their own laws." *Osborn v. Griffin*, 865 F.3d 417, 443 (6th Cir. 2017) (collecting cases). Although each of the Agreements between the parties in this case contains a choice-of-law provision stating that it "shall be governed by and construed according to Kansas law," (Doc. 1-5 at 7; Doc. 1-7 at 8; Doc. 1-10 at 7), the Sixth Circuit "has recognized that 'Kentucky courts will not automatically honor a choice-of-law provision, to the exclusion of all other considerations.'" *See Osborn*, 865 F.3d at 443 (quoting *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 393 (6th Cir. 2000)).

Kentucky courts apply the "most significant relationship test" following the Second Restatement of Conflict of Laws to determine the law that governs contracts, even when the parties included a choice-of-law provision in their contract, and consider factors such as the place of negotiating, place of performance,

9

and location of the subject matter of the contract. *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 574–75 (6th Cir. 2019) (citing *State Farm Mut. Auto. Ins. Co. v. Hidgkiss-Warrick*, 413 S.W.3d 875, 878–79 (Ky. 2013)). Here, the parties do not dispute that Kentucky was the place of negotiation, place of performance, and location of the subject matter of the contracts. (*See* Doc. 62 at 14).

Further, "the Sixth Circuit has been clear that if no conflict exists and a state has a presumption for applying its own law, its own law will apply." *Asher*, 737 F. Supp. 2d at 668 n.1 (citing *Williams v. Toys "R" Us*, 138 F. App'x 798, 803 (6th Cir. 2005)). Here, the parties agree that there is no conflict between Kansas and Kentucky law regarding the construction of the parties' contracts.[4] (Doc. 63 at 10). Therefore, the Court will apply Kentucky substantive law to the claims in this case.

## A. Statute of Limitations

The Court first evaluates Defendant's renewed argument that Plaintiff's claims are barred by the statute of limitations. The parties agree and the Court finds that the applicable statute of limitations is provided by KRS § 413.245, which states that actions arising out of professional services, whether in contract or tort,

---

[4] There is also no dispute that Kentucky law governs the tort claims in this case. (Doc. 62 at 14 n.4).

"shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured." (*See* Doc. 59 at 19; Doc. 62 at 17).

        i.   *Statute of Limitations Provision in Agreements*

The 2014, 2017, and 2018 Agreements between the parties each contain a statute of limitations provision stating that "the applicable statute of limitations shall commence to run not later than the date of Consultant's substantial completion of services on the project." (Doc. 1-5 at 6; Doc. 1-7 at 7; Doc. 1-10 at 6). This Court previously found that "the law is clear that the parties can, by contract, change the way the limitations run by statute" and that, here, Terracon did not substantially complete its services on the relevant project until it was terminated on December 26, 2018, which made this suit timely, as it was filed on December 13, 2019. (Doc. 28, Tr. at 14:9-24, 15:4-5). Although Terracon argues that the language "not later than" in the provision means that it sets forth only the absolute latest date on which the statute of limitations will accrue, Kentucky courts have construed the same language to allow the filing of a complaint up to one year after the date listed in the contract in the context of KRS § 413.245. *See Schultz v. Cooper*, 134 S.W.3d 618, 619-20

(Ky. Ct. App. 2003); *Old Mason's Home of Ky., Inc. v. Mitchell*, 892 S.W.2d 304, 307 (Ky. Ct. App. 1995).

However, the Agreements executed by the parties in 2014, 2017, and 2018 do not reverse the accrual of the statute of limitations for conduct between 2008 and 2011. The Agreements neither purport to retroactively apply to previously rendered services nor to reinstate any claims Rumpke may have previously had against Terracon. In Kentucky, subsequent agreements cannot revive a statute of limitations where it has already expired. *See Creech v. Harlan-Cumberland Coal Co., LLC*, No. 2018-CA-001750-MR, 2020 WL 1815996, at *4 (Ky. Ct. App. Apr. 10, 2020), *review denied* (Dec. 9, 2020). Therefore, the statute of limitations provision found in the Agreements applies only to render Rumpke's claims regarding Terracon's conduct after September 22, 2014, timely, pursuant to this Court's previous ruling.

### ii.  *Occurrence and Discovery*

Whether Rumpke's claims regarding Terracon's pre-2014 conduct are timely is governed by KRS § 413.245 and Kentucky law, as no written contracts existed between the parties until September 2014. (Doc. 59 at 8). KRS § 413.245 contains two different measurements of the statute of limitations period: the occurrence rule and the discovery rule. *Lore, LLC v. Moonbow Invs., LLC*, No. 2012-CA-001305-MR, 2014 WL 507382, at *8 (Ky. Ct. App. Feb. 7,

2014). Thus, "an aggrieved party must commence a professional malpractice cause of action within one year from either the date of: (a) occurrence, or (b) 'actual or constructive discovery of the cause of action.'" *Id.* (quoting *Queensway Fin. Holding Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 148 (Ky. 2007)).

Because the Court concludes that application of the discovery rule renders Rumpke's claims premised on Terracon's pre-2014 conduct timely, the Court need not address the occurrence rule.

The "'discovery' limitation period begins to run when the cause of action was discovered or, in the exercise of reasonable diligence, should have been discovered." *Queensway*, 237 S.W.3d at 148 (citing *Michels v. Sklavos*, 869 S.W.2d 728, 730 (Ky. 1994)). "Kentucky law has never required a specified dollar amount be known before the statute of limitations can run" and "[t]he statute of limitations begins to run as soon as the injury becomes known to the injured" even if the extent of the damages is unknown. *Matherly Land Surveying, Inc. v. Gardiner Park Dev., LLC*, 230 S.W.3d 586, 591 (Ky. 2007) (citing *Bd. of Educ. of Estill Cnty., Ky. v. Zurich Ins. Co.*, 180 F. Supp. 2d 890, 893 (E.D. Ky. 2002)). Notably, continuing to retain a defendant to investigate the issues it allegedly caused will not toll the statute of limitations. *See Old Mason's Home*, 892 S.W.2d at 308 (holding that there was no evidence to justify invoking a tolling statute where the defendant informed

13

the plaintiff that it was continuing to investigate the cause of the problems).

Both parties rely on the Kentucky Court of Appeals' decision in *Lore*, 2014 WL 507382, to support their positions. (*See* Doc. 62 at 19; Doc. 63 at 7). In that case, the court held that mere cosmetic cracking of a building would not have been enough to trigger the discovery rule and commence the running of the statute of limitations. *Lore*, 2014 WL 507382, at *9. However, the complainants in that case readily admitted that the building had also begun to experience "structural distress" such that the complainants' concern was sufficiently aroused to call someone to investigate and identify the cause of the damage, which was enough to trigger the discovery rule. *Id.* at *9, *11.

Although, here, Rumpke again requested Terracon's assistance with the perimeter berm in 2014, the tension cracks that occurred then had been occurring since at least 2005 and were not akin to the "structural distress" experienced by the building in *Lore*. This is supported by the testimony of Terracon's own employee, Ron Ebelhar, who stated that he was not surprised that the berm had issues in 2014, even after the completion of the slope reconstruction, because Terracon told Rumpke that additional settlement maintenance would be necessary and that Rumpke "could

expect continued creek movement" following the slope rebuild. (Doc. 57-1, Ebelhar Dep. at 177:16–178:12).

Although Rumpke's reengagement of Terracon in 2014 alone did not toll the statute of limitations, *see Old Mason's Home*, 892 S.W.2d at 308, the tension cracks in this case are like the cosmetic cracks in *Lore*, which alone would not have been enough to trigger the discovery rule because they were anticipated by the parties. *See* 2014 WL 507382, at *9. Thus, the Court finds that the discovery rule was not triggered until December 2018, when the perimeter berm experienced issues that were more serious than tension cracks, like the structural distress in *Lore*. Therefore, the Court finds that Rumpke's claims regarding Terracon's pre-2014 conduct are also timely.

### B. Limitation of Liability Provisions

Next, the Court evaluates Defendant's argument that Plaintiff's damages are capped by the limitation of liability provisions in the parties' contracts.

#### i.   2014, 2017, and 2018 Agreements

The 2014, 2017, and 2018 Agreements between the parties each contain a provision limiting Terracon's potential liability arising out of its services or the agreement to the greater of $50,000, $50,000, or $10,000, respectively, or the amount of Terracon's fee under the agreement. (Doc. 1-5 at 6; Doc. 1-7 at 7;

15

Doc. 1-10 at 6). The parties do not dispute that Terracon charged Rumpke $44,919.22 under the 2014 Agreement, $9,985.00 under the 2017 Agreement, and $35,372.50 under the 2018 Agreement, meaning that, under those provisions, Terracon's aggregate potential liability for services rendered pursuant to those Agreements is limited to $135,372.50. (Doc. 59 at 23).

Kentucky courts generally enforce contractual limitations on liability, particularly when liability is limited as a result of negotiated clauses that are the product of an arm's-length transaction between sophisticated businesses with presumably equal bargaining power, as was the case here, *see Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 654 (Ky. 2007), and Rumpke does not argue against the validity of the provisions. (*See* Doc. 62 at 22-24).

However, the parties also agree, and the Court finds, that the 2014, 2017, and 2018 Agreements only govern work performed after their execution. (*See* Doc. 62 at 23; Doc. 63 at 10). Because the parties agree that the provisions do not limit liability for claims related to Terracon's pre-2014 conduct, including for Rumpke's allegation that Terracon breached the standard of care in 2008, the Court finds that the Agreements limit Rumpke's damages to $135,372.50 only for complained-of conduct that occurred after September 22, 2014, when the first Agreement was executed.

16

       *ii.  Terracon's Commercial General Liability Policy*

Each Agreement's limitation of liability provision also states that it "SHALL NOT APPLY TO THE EXTENT THE DAMAGE IS PAID UNDER [Terracon's] COMMERCIAL GENERAL LIABILITY POLICY." (Doc. 1-5 at 6; Doc. 1-7 at 7; Doc. 1-10 at 6). Rumpke argues that, because Terracon did not present evidence that it tendered a claim to its insurer or that its insurer denied coverage, Terracon has not proven the absence of a genuine factual dispute as to whether damage would be paid under such a policy. (Doc. 62 at 23-24).

However, Terracon's relevant insurance policies specifically prohibit coverage for the provision of professional services, such as those rendered by engineers, architects, and surveyors, and Terracon's allegedly deficient provision of professional services forms the basis of Rumpke's suit. (Doc. 63-1 at 13, 34). Other courts interpreting the same contract and policy language have held that summary judgment is not precluded where, as here, the plaintiff is suing based on the provision of professional services. *See Hilsinger Bldg. & Dev. Corp. v. Terracon Consultants, Inc.*, No. 1:18-CV-900, 2019 WL 4601774, at *9, *12 (S.D. Ohio Sept. 23, 2019); *Taylor Morrison of Colo., Inc. v. Terracon Consultants*, No. 10-CV-2032, 2015 Colo. Dist. LEXIS 370, at *30 (Colo. Dist. Ct. May 4, 2015).

Thus, the Court finds that there is no factual dispute as to whether damages would be paid under Terracon's commercial general liability policy and the limitation of liability provisions cap Rumpke's damages at $135,372.50 for conduct that occurred after September 22, 2014.

### C. Tort Claims

Next, the Court evaluates Defendant's argument that it is entitled to judgment as a matter of law on Plaintiff's tort claims, including for gross negligence, professional negligence, and breach of warranty.

"Under Kentucky law, the failure to perform a contractual obligation typically does not give rise to a cause of action in tort." *Cap. Holdings 234, LLC v. Advoc. Consulting Grp., PLLC*, No. 1:17-CV-00023-GNS, 2017 WL 3816721, at *3 (W.D. Ky. Aug. 31, 2017) (citing *Ronald A. Chisholm, Ltd. v. Am. Cold Storage, Inc.*, No. 3:09-CV-00808-CRS-JDM, 2012 WL 5362306, at *3 (W.D. Ky. Oct. 31, 2012)). However, "'[i]f a plaintiff can establish the existence of an independent legal duty, then he may maintain an action in tort even though the acts complained of also constitute breach of contract.'" *Chisholm*, 2012 WL 5362306, at *3 (quoting *Mims v. W.S. Agency, Inc.*, 226 S.W.3d 833, 836 (Ky. Ct. App. 2007)). Where contract claims are merely "repackaged" as tort claims and the defendant owes no duty independent of a contract, a plaintiff may

18

not maintain a tort action. *See Nelson v. Columbia Gas Transmission, LLC*, 808 F. App'x 321, 330 (6th Cir. 2020).

### i.   Gross Negligence

In *Loxodonta Aviation, LLC v. Delta Private Jets, LLC*, the court found that the plaintiff could not maintain its negligence and gross negligence claims where the defendant's statutory obligations to maintain the airplanes it chartered only extended to the plaintiff by virtue of the parties' agreement and the defendant's legal duty to comply with regulations was expressly incorporated into the agreement. No. CV 19-109-DLB-CJS, 2020 WL 4516829, at *5-6 (E.D. Ky. Aug. 5, 2020). Similarly, in *Hilsinger*, the court, applying analogous Ohio law, found that where the defendant had an express contractual duty to perform services "in a workmanlike manner, consistent with professional standards," the plaintiff had failed to identify a duty independent of the contract and, thus, its claims sounded only in contract law even though it had asserted a negligence claim. 2019 WL 4601774, at *6.

Here, Rumpke's gross negligence claim is based on an alleged breach of Terracon's duty to exercise the degree of care and skill expected of a reasonably competent geotechnical engineer acting under similar circumstances. (Doc. 1 at ¶ 85). Much like in *Loxodonta* and *Hilsinger*, this duty is also expressly part of the 2014, 2017, and 2018 Agreements, which state that Terracon "will

perform the Services in a manner consistent with that level of care and skill ordinarily exercised by members of the profession currently practicing under similar conditions in the same locale." (Doc. 1-5 at 6; Doc. 1-7 at 7; Doc. 1-10 at 6).

Further, Rumpke does not argue that it has established the existence of a legal duty independent of the parties' contractual relationship regarding its gross negligence claim. (*See* Doc. 62 at 24–26). As Terracon notes, in the absence of a contract, it would not have performed any services for Rumpke and thus would not have owed Rumpke any duties. (Doc. 59 at 28). Although Rumpke does point out that the parties did not enter into a written contract until 2014, (Doc. 62 at 24), it is a well-established principle that a contractual relationship can exist even in the absence of a writing, and it is undisputed that the parties here have been in a contractual relationship at all relevant times. Therefore, the Court finds that Rumpke may not maintain its gross negligence claim under Kentucky law.

### ii. *Professional Negligence*

However, Rumpke has argued that its professional negligence claim arises out of an independent legal duty owed by Terracon as a professional engineering firm. (*Id.* at 25). Under Kentucky law, engineers, who are licensed professionals, have a duty to perform according to the standards of their profession. *Cardinal Indus.*

20

*Insulation Co. v. Norris*, No. 2004-CA-000525-MR, 2009 WL 562614, at \*18 (Ky. Ct. App. Mar. 6, 2009) (citing *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 249 (Ky. 1992)). Further, the Kentucky Court of Appeals recently noted that Kentucky "case law on professional negligence claims is clear that no duty exists in the absence of a contractual relationship between the parties or a reasonable expectation that the professional will benefit the complaining party." *New Albany Main St. Props., LLC v. Stratton*, No. 2021-CA-0562-MR, 2022 WL 1695881, at \*10 (Ky. Ct. App. May 27, 2022). Because a contractual relationship is a prerequisite to a professional negligence claim, the existence of a contractual relationship cannot logically bar such a claim. Further, Terracon has not cited, and the Court has not found, a case in which a professional negligence claim was dismissed due to the existence of a contractual relationship.[5] Thus, the Court finds that Rumpke's professional negligence claim may be maintained under Kentucky law despite the existence of a contract between the parties.

### iii. Breach of Warranty

Although neither party provided an analysis of Rumpke's breach of warranty claim, it, much like a professional negligence claim, requires a contractual relationship between the parties in

---

[5] Although the court in *Capital Holdings* dismissed a professional negligence claim, that case was controlled by a forum selection clause requiring that all claims arising under the relationship between the parties be brought in Florida, not Kentucky. *See* 2017 WL 3816721, at \*3.

order to proceed. *See Warndorf v. Otis Elevator Co.*, No. CV 17-159-DLB-CJS, 2019 WL 137585, at *3 (E.D. Ky. Jan. 8, 2019) (citing *Complex Int'l Co., Ltd. v. Taylor*, 209 S.W.3d 462, 465 (Ky. 2006)). As such, logic dictates that a contractual relationship cannot be both a requirement of and a bar to a breach of warranty claim. Terracon has failed to cite, and the Court has not found, any case in which a Kentucky court has dismissed a breach of warranty claim on the grounds of the existence of a contract between the parties. Therefore, the Court finds that Rumpke may also maintain its breach of warranty claim.

### D. Punitive Damages

Defendant's final argument is that Plaintiff's claim for punitive damages fails as a matter of law. "Kentucky law provides two different avenues for the recovery of punitive damages: one statutory and one under common law." *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 870 (Ky. 2016). KRS § 411.184(2) provides that "[a] plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with oppression, fraud, or malice." The Kentucky Supreme Court has also held that punitive damages may be awarded when the evidence satisfies the common law standard of gross negligence. *Saint Joseph*, 487 S.W.3d at 870 (citing *Williams v. Wilson*, 972 S.W.2d 260 (Ky. 1998)). It is well settled that "under Kentucky law

22

punitive damages are not generally available in contract." *Evans v. Novolex Holdings, LLC*, No. CV 20-98-DLB-CJS, 2021 WL 2187347, at *7 (E.D. Ky. May 28, 2021) (citing *Nami Res. Co., LLC v. Asher Land & Mineral, Ltd.*, 554 S.W.3d 323, 335 (Ky. 2018)).

Here, the record before the Court does not support a claim of punitive damages. Rumpke has not alleged any facts that show that Terracon acted with oppression, fraud, or malice in the provision of its engineering services. Even though Rumpke has argued that Terracon's actions were grossly negligent, it may not proceed with that claim in light of the above-discussed contractual relationship between the parties. Further, the 2014, 2017, and 2018 Agreements each contain a clause prohibiting the recovery of punitive or exemplary damages and Rumpke does not contest the validity of those provisions. (*See* Doc. 1-5 at 7; Doc. 1-7 at 8; Doc. 1-10 at 9). Nonetheless, those Agreements do not apply to Terracon's pre-2014 conduct.

Although it is an unsettled question of law in Kentucky whether a plaintiff in a professional negligence action can recover punitive damages upon a showing of "mere negligence," a court in the Western District of Kentucky found that, in those circumstances, the plaintiff should be precluded from recovering punitive damages. *See McMurtry v. Wiseman*, No. 1:04CV-81-R, 2006 WL 2375579, at *3 (W.D. Ky. Aug. 16, 2006); *see also Bierman v.*

*Klapheke*, 967 S.W.2d 16, 19–20 (Ky. 1998) (allowing punitive damages in a legal malpractice case where an attorney committed fraud); *Hardaway Mgmt. Co. v. Southerland*, 977 S.W.2d 910, 917 (Ky. 1998) (clarifying that, in *Bierman*, the claim for punitive damages was upheld because it was "clearly independent" from the negligence claim).

However, this Court need not definitively decide whether Rumpke's only non-contractual claim of professional negligence would support a request for punitive damages considering the lack of factual support in the record. Therefore, the Court finds that Terracon is entitled to judgment as a matter of law with respect to Rumpke's request for punitive damages.

### *Conclusion*

Therefore, for the reasons stated above, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment (Doc. 59) be, and is hereby, **GRANTED IN PART** and **DENIED IN PART** consistent with this opinion; and

(2) **ON OR BEFORE OCTOBER 28,2022**, the parties shall file a joint status report indicating whether they believe this matter might be resolved or whether it needs to be set for trial.

This 5th day of October 2022.



**Signed By:**

*__William O. Bertelsman__* WOB

**United States District Judge**